IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

[FILED STAMP: SOUTHERN DISTRICT OF MISSISSIPPI   F I L E D   AUG 15 2014   ARTHUR JOHNSTON   BY _____ DEPUTY]

Merlin Darcey Hill #R4779         Plaintiff

V.         Civil Action No. 3:14-cv-00062-HTW-LRA

Michael Walker, et al.         Defendant

## MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANT OLLIE LITTLE'S MOTION TO DISMISS

Defendant, Ollie Little claims that by denying Petitioner access to the V.A. Medical Center in Jackson, MS. in June, 2013, that he did not violate Petitioner's First Amendment Right to Petition the Government for a Redress of Grievance, Petitioner contends otherwise and states as follows:

1. Since the opening of the East Miss. Correctional Facility [hereafter "EMCF"] in the late 1990's, Veterans housed at EMCF have been transported to the Jackson, MS. V.A.M.C. for Medical Appointments and Treatment, thus showing a long history of such actions at EMCF.

2. The practices, stated in item 1. (above), only ended when MTC tookover control of EMCF from its previous operator (GEO Group, Inc.) and Defendant Ollie Little was placed incharge of EMCF's Medical Department.

3. Defendant Ollie Little was a longtime employee of the previous facility operator and is fully aware that Veterans housed at EMCF (a facility built to house psychiatric inmates) have routinely been transported to the Jackson, MS. V.A.M.C. for Appointments and/or Treatment in the past.

4. Defendant Ollie Little, as Director of the E.M.C.F. Medical Department, must/should be knowledgable of M.D.O.C.

1.

policy 25-11-E, which states as follows:
"The Health Services Administrator <u>will explore</u> scheduling options with the appropriate institutional staff in order to determine the most efficient structure of both on-site <u>and off-site</u> healthcare appointments."
It also states the following:
"The Health Services Administrator or designee <u>will notify</u> correctional staff of the identity of those inmates requiring escorted movement."
But nowhere, within MDOC Policy 25-11-E, does it state that the scheduling of Medical Appointments are to be refered to the Unit Case Manager.

5. In the Second Step Response to ARP EMCF13-1759, of which this case is derived, Warden J. Buscher stated "According to the First Step Response from Major Smith, he stated that transport to any other facility has to be done per court order and approved by MDOC authorities" this is completely false as Miss. Code Ann. §47-3-3 clearly states by the clause "or other necessity" and the fact that inmates at EMCF are transported to Hospitals and other Medical facilities in Meridian (and elsewhere - including Jackson, MS.) frequently for scheduled and non-scheduled Medical Appointments and/or Treatment.

6. Defendant Ollie Little claims that Miss. Code Ann §47-3-3 provides no basis for Plaintiff's Section 1983 lawsuit, Plaintiff contends (as in item 5) that §47-3-3's clause "or other necessity" does infact allow for Transport of Veteran inmates from prison to a V.A. Medical Center for medical examination and/or treatment.

Petitioner, at this point shall quote from the U.S. Supreme Court's decision in <u>Johnson v. Avery, 393 U.S. 483</u>. The following

2.

quote from the Honorable Mr. Justice Fortas was originally meant to apply to Jail-house lawyers, but I believe it also applies in this cercomstance:

> "There can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions. Here Tennessee has adopted a rule which, in the absence of any other assistance for such prisoners, effectively does just that. The District Court concluded that 'for all practical purposes, if such prisoners cannot have the assistance of a Jail-house Lawyer, their possibly valid consitutional claims will never be heard in court.'"

To place the above quote into the context of this case, Artical One, Section 8, of the U.S. Constitution gives the U.S. Congress the power to create and maintain an active military during both peacetime and during times of war, Congress has also created and maintains the Veterans Administration to aid and assist former military personell and their families, so just as a state cannot enact, adopt or enforce a rule forbidding certain prisoners from filing habeas corpus petitions, it therefore follows that veteran prisoners should not be likewise hindered from obtaining deserved V.A. disability benefits for both him or her self and his or her family. And to allow MTC and Ollie Little and/or the State to change EMCF's longstanding policy of transporting inmates to the Jackson, MS. V.A. Medical Center for medical appointments and/or treatment of service related injuries would do just that to any/all Veterans housed at EMCF along with their families.

And to quote the Honorable Mr. Justice Douglas, concuring in the same aforementioned case:

> "The plight of a man in prison may in these respects be even more acute than the plight of a person on the outside.... He may have grievances of a civil nature

3.

against those outside the prison. His imprisonment may give his wife grounds for divorce and be a factor in determining the custody of his children; and he may have pressing social security, workmen's compensation, or <u>veterans claims.</u>"

And now I ask this Honorable Court, if the only way to determine whether Plaintiff's Veterans Disability Claims are valid is through direct examination by the V.A. Medical Center's own Doctors, and those Doctors are denied access to Plaintiff to perform the required mental and physical examinations be it by the State, MTC, or Defendant Ollie Little, how is that not a denial/chilling of Plaintiff's First Amendment Right to Petition the Government for a Redress of Grievance. To sanction such a ~~rate change~~ ruthless consequence, inevitably resulting from a internal rule change at EMCF errected by MTC and/or Defendant Ollie Little would justify a latter-day Antole France to add one more item to his ironic comments on the 'Majestic equality' of the law:

"The law in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread." (John Cournos, A Modern Plutarch, p. 27)"

MTC and/or Defendant Ollie Little cannot be free to produce such squalid discrimination. If the law, MDOC Policy, and previous general policy of/at the East Miss. Correctional Facility was to allow (i.e. transport) U.S. Veterans, housed at EMCF, access to the Jackson, MS., V.A. Medical Center for appointments/treatment related to service oriented disabilities/benefits, it cannot now make lack of access an effective bar to the exercise of this opportunity. The Government, nor its Contractors, cannot keep the word of promise to the ear of those rightfully deserving of Veterans Benefits and allow the State, its agencies, its contractors or Defendant Ollie Little to then break it to their hope. (Addapted from a statement made by U.S. Supreme Court in <u>Chambers v. Florida, 309 U.S. 227, 241</u> by Mr. Justice Frankfurter in his concurring opinion, and believed by Petitioner to justly apply to this case).

Therefore, Plaintiff puts forth that he has indeed stated a claim under 42 U.S.C. §1983 of a violation of the Petition Clause of the First Amendment by Defendant Ollie Little and thereby Plaintiff requests that this Honorable Court dismiss Defendants request to be dismissed from this action be denied without prejudice.

Date: 12 Aug. 2014

Respectfully submitted

Merlin Hill #R4779
Merlin Hill, pro se.

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 25-11-E |
|---|---|---|
| | | AGENCY WIDE MEDICAL |
| | **PATIENT ESCORT** | INITIAL DATE 05-01-2004 |
| ACA STANDARDS: 4-4349, 4-4414 NCCHA STANDARDS: P-E-10 | | EFFECTIVE DATE 05-01-2004 |
| STATUTES: | NON-RESTRICTED | Page 1 of 2 |

### POLICY:

It is the policy of the Mississippi Department of Corrections (MDOC) that the Medical Provider ensures that the inmate population's access to both on-site and off-site medical, dental, and mental health clinical care is maintained and facilitated through timely escorted movement.

### DEFINITIONS:

(None)

### PRECEPTS/PROCEDURES:

Correctional staff will cooperate with healthcare staff in order to make inmates available for scheduled on-site and off-site appointments.

Healthcare staff will attempt to schedule on-site and an off-site clinical appointments in a manner that is least disruptive of the institution's routine.

Scheduling Criteria

The Health Services Administrator will explore scheduling options with the appropriate institutional staff in order to determine the most efficient structuring of both on-site and off-site healthcare appointments. Factors to consider will include, but not be limited to:

- Security level
- Escort availability
- Institutional schedule (i.e., counts, meals, recreation, visiting times, programs)
- Location of sick call services (i.e., medical unit, housing area with medical offices)

The Health Services Administrator or designee will notify correctional staff of the identity of those inmates requiring escorted movement.

"No Show Policy"

The reasons specific to all missed off-site appointments will be discussed at the Medical Advisory Committee meetings and the Continuous Quality Improvement meetings.

Confidentiality

The Medical Provider will ensure that all inmate medical information remains confidential.

25-12-E (a)
Forms (0)
Medical

| TITLE: PATIENT ESCORT | | POLICY NUMBER 25-11-E |
|---|---|---|
| EFFECTIVE DATE: 05-01-2004 | NON-RESTRICTED | Page 2 of 2 |

41 **Security Escorts**
42
43 Security escorts will be provided relevant health care information in order to ensure the
44 maintenance of security/safety issues specific to inmates, correctional officers and the general
45 public.
46
47 For each transport, Security escorts will document the number of the following:
48
49 • Involved officers
50 • Vehicles
51 • Guards
52 • Hours for each guard involvement
53
54 **DOCUMENTS REQUIRED:**
55
56 As required by this policy and through the chain of command.

| ENFORCEMENT AUTHORITY | |
|---|---|
| All standard operating procedures (sops) and/or other directive documents related to the implementation and enforcement of this policy shall bear the signature of and be issued under the authority of the MDOC Medical Director, MDOC General Counsel, and the Commissioner of MDOC. | |
| **Reviewed and Approved for Issuance** | *[signature]* 4/28/04 <br> Medical Director — Date <br> *[signature]* 4-29-04 <br> General Counsel — Date <br> *[signature]* 04/30/04 <br> Commissioner — Date |

25-12-E (c)
Forms (0)
Medical

CERTIFICATE OF SERVICE

This is to certify that I have this date, caused to be mailed, via United States Mail, postage pre-paid, a true and correct copy of the above and foregoing Pleading to:

Clerk, U.S. Dist. Court
Southern District of Miss.
501 E. Court St., Suite 2.500
Jackson, MS. 39201

Tommy D. Goodwin
Miss. Atty. General's Office
P.O. Box 220
Jackson, MS. 39205-0220

Walter T. Johnson
Robert H. Pendersen
WATKINS & EAGER, PLLC
400 E. Capital St., Suite 300
P.O. Box 650
Jackson, MS. 39205

SO CERTIFIED, this the 12 day of August, 20 14.

Merlin Hill
Plaintiff
R4779
MDOC #
10641 Hwy 80 west
Address
Meridian, MS. 39307
Address

6.