## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MERLIN DANCEY HILL**                                                              **PLAINTIFF**

**VS.**                                          **CIVIL ACTION NO. 3:14cv62-LRA**

**MICHAEL WALKER, ET AL**                                                **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

The parties appeared and participated in an omnibus or *Spears*[1] hearing on January

27, 2015.  Plaintiff Merlin Dancey Hill appeared *pro se*, Defendants Marcell Walker, J.

Buscher, D. Smith, and Management & Training Corporation ["MTC"] were represented

by Steven J. Griffin; Defendant Ollie Little was represented by Robert Pedersen; and

Defendant Christopher Epps was represented by Tommy Goodwin.  Prior to the hearing,

on July 31, 2014, Defendant Little filed a Motion to Dismiss Complaint [18], and

argument regarding that motion was heard.  After consideration of the motion, the

supporting pleadings, Hill's sworn testimony, the record, and the applicable law, the

Court finds that Plaintiff has failed to state a constitutional claim upon which relief may

be granted as to any Defendant, and his Complaint must be dismissed under 28 U.S.C. §

1915.  Furthermore, the motion of Defendant Little is well-taken and shall be granted.

---

[1]Such a hearing was authorized by the Fifth Circuit Court of Appeals in the case of
*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

## I. Plaintiff's Claims

Jurisdiction of this case is based upon 42 U.S.C. § 1983.  On or about June 2, 1998, Plaintiff was convicted of a felony and sentenced to a term of life in prison.   He was placed in the custody of the Mississippi Department of Corrections [MDOC] at that time and was housed in the East Mississippi Correctional Facility [EMCF] in 2011. MTC managed the EMCF in 2011.  Plaintiff is a veteran of the United States Air Force, having served from October 16, 1979, until he left the service upon honorable discharge on or about September 1, 1993.

Plaintiff claims that he is disabled due to headaches, hearing problems, insomnia, alcohol abuse, and paranoid schizoaffective disorder.  Claiming that these medical problems were related to his military service, he filed an application for disability benefits with the Veteran's Administration [VA] on July 14, 2011.  On June 18, 2013, he received a letter from the Department of Veteran's Affairs stating that they were attempting to schedule medical examinations to substantiate his claims of service-related disabilities, and notifying him that his failure to attend these examinations could result in the denial of benefits.  Plaintiff testified that he contacted Ms. Brown, a mental health counselor working at EMCF, to discuss being transported for the required medical exams.  She explained to him that it was MTC's policy to refer all contact with the VA to the unit case manager, Defendant Michael Walker.  Plaintiff suggested that the VA be allowed to come to EMCF to perform his examination, but the Warden refused to allow this.   Other Mississippi prisons, such as the facility at Walnut Grove, do allow the VA to come on the

premises for this purpose, according to Plaintiff.  He contends that the past policy at EMCF was to regularly allow transportation of prisoners to the VA for both treatment and examinations.  When MTC took over, and Defendant Little became medical director, this policy was changed by him to deny such transportation.

According to Plaintiff, Defendant Walker failed to have him transported to Jackson for the medical examination.  He received a letter from the VA on June 26, 2013, informing him that his application was denied because the VA was informed by EMCF that Plaintiff could not be transported by EMCF.  His appointments were cancelled on June 18, 2014, because of EMCF's communication.  According to Plaintiff, he lost his appeal with the VA, and he is permanently denied from reapplying for these benefits.

Plaintiff claims that he lost veteran's benefits for him and for his family due to these Defendants' actions.  He contends that these Defendants "denied or chilled" his "First Amendment Rights to petition the government for redress of grievances." Complaint, p. 4.  He also claims that Defendant Little violated MDOC policy 25-11-E, which requires the medical department to schedule on-site and off-site appointments. Plaintiff also charges that these Defendants violated Miss. Code Ann. § 47-3-3, as well as his First, Fifth, Eighth and Fourteenth Amendment Rights.

Plaintiff exhausted his administrative remedies in this case.  His First Step Response was given by Defendant Major Smith, dated November 30, 2013 [31-1, p. 13]. Major Smith responded to his ARP by stating that the transport of offenders to another facility has to be done per court order and approved by MDOC authorities.  According to

3

Major Smith, staff would not have cancelled his appointment or refused to have taken Plaintiff if an Order had been obtained.   The Second Step response was given by Defendant Warden Buscher, and he reiterated the response from the First Step that transport must be done per court order and approved by MDOC authorities.  Further, he advised that Plaintiff's records "do not show that EMCF/MTC has received any orders to transport you to Jackson VA Medical facility for a preapproved appointment.  MDOC only makes the decision to allow you to attend the VA requests, not EMCF/MTC Officials." [31-1, p. 15].

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief.  See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1356 (2004).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Plaintiff was granted *in forma pauperis* status by this Court by Order entered April 24, 2014 [6].  A court must "dismiss [an IFP] case at any time if the court determines that .

. . the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Under the IFP statute, "[a] claim may be dismissed for failure to state a claim upon which relief can be granted if, assuming all well-pleaded facts are true, the plaintiff has not stated enough facts to state a claim to relief that is plausible on its face." *Jones v. McDuffie*, 539 F. App'x 435, 435 (5th Cir. 2013) (per curiam) (internal quotation marks omitted).

To properly state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

A *pro se* prisoner is entitled to develop his complaint factually before a proper frivolousness determination can be made. *See Eason v. Thaler*, 14 F.3d 8, 9-10 (5th Cir. 1994). The purpose of a *Spears* hearing is to "bring into focus the factual and legal bases of prisoners' claims." *Id.* at 9 (quoting *Spears,* 766 F.2d at 181). The omnibus or *Spears* hearing was conducted for this purpose, in part, and Plaintiff was allowed to fully explain in

his own words the factual basis of his claims.  The Court's decision is based upon all of the pleadings, as well as Plaintiff's own sworn testimony.

### III.  Discussion

In order to allege a constitutional violation sufficient to state a cause of action under 42 U.S.C. §1983, the plaintiff must be deprived of some right secured to him by the Constitution or the laws of the United States.  *Irving v. Thigpen*, 732 F.2d 1215, 1216 (5th Cir. 1984) (*citing* 28 U.S.C. §2254(a) (1982).  In the event there is no constitutional right, the plaintiff's complaint fails.  *Irving*, 732 F.2d at 1216 (*citing Thomas v. Torres*, 717 F.2d 248, 249 (5th Cir. 1983)).  Here, although Plaintiff contends that he was entitled to be taken to his VA medical examination by his custodians, and points to the First, Fifth, Eighth and Fourteenth Amendments, the Court is unable to find that such a right exists.

Plaintiff's primary argument is that these Defendants violated the Petition Clause of the First Amendment.  "Among other rights essential to freedom, the First Amendment protects the 'right of the people... to petition the Government for a redress of grievances.'"[2] U.S. Const., Amdt.1; *Borough of Duryea, Pennsylvania, v. Guarnieri*, 131 S.Ct. 2488, 2491 (2011).  The Petition Clause guarantees an inmate access to the courts.  *Driggers v. Cruz,* 740 F.3d 333, 336-7 (5th Cir. 2014) (right of access to the courts is an aspect of the First

---

[2]The full text of the First Amendment is: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Amendment right to petition the Government for redress of grievances). Plaintiff considers his application for benefits a "petition for redress of grievances."

The Petition Clause has also been applied to determine if mail restrictions on an inmate's mail to government agencies are allowed. *Taylor v. Sterrett,* 532 F.2d 462, 480 (5th Cir. 1976). These are the primary areas the Petition Clause has been utilized in the context of a prisoner §1983 case: access to court claims and claims that mail restrictions are unconstitutional. Plaintiff contends that he has attempted to "petition" the VA for disability benefits, and these Defendants interfered with that right by failing to allow him to be transported for his medical examination.

The Court has been unable to locate a case wherein the Petition Clause was applied in such a fashion as Plaintiff urges under his facts and circumstances, nor has Plaintiff cited such a case. His mail was not interfered with, nor was his access to the courts. There is no question that the VA received his correspondence, and Defendants did not interfere with his communications to the VA. Plaintiff's own pleadings confirm that the VA received his correspondence on July 14, August 30, September 14, December 1, in 2011; on April 16 and December 17, 2012; and, February 11 and April 19, 2013. [8-1 at 6]. Obviously, Plaintiff cannot and does not contend that these Defendants interfered with his mail and correspondence with the VA; their interference with his purported "petition" was only their purported failure to transport him for his medical appointment.

7

The Court finds no authority for a finding that Plaintiff's VA application for disability is a "petition for a redress" of his grievances in the context of the First Amendment. The case of *Marrow-El v. Shearin*, Civil Action No. JFM-1-1009, 2012 WL 366892 (D. Maryland Feb. 2, 2012), *affirmed per curiam*, 487 Fed.Appx. 127 (4th Cir. 2012), involved a situation similar to Plaintiff's. The plaintiff was also a prisoner and a veteran and had applied for an increase in his VA benefits. Because the defendants refused to transport him for a VA examination, his claim was denied. Defendants did not transport him due to a security policy providing that inmates were only permitted to leave their institution for institutional transfers, court appearances and emergency medical matters. *Id.* at *2. The policy provided that private visits to the prison could be arranged by outside entities, but defendants had received no such requests from the VA.

The court analyzed plaintiff's claims under the Due Process Clause, finding that he had not stated a cognizable claim as he failed to identify a liberty interest that was protected by Due Process. *Id.* at *4. He had not identified a statute or regulation using mandatory language creating an enforceable expectation of a liberty interest in being transported from a state facility for a medical examination. Citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the court concluded that the regulation regarding transfers among facilities contemplated routine management of the facility and concerns for safety, and they did not impose "atypical and significant hardship on the inmate" as defined in *Sandin*. Because the

8

plaintiff could not show a legitimate liberty interest--required under a procedural due process claim--- he failed to state a claim concerning his transfer to a VA hospital.  *Id.*

The court in *Marrow-El* also denied plaintiff's claim that he did not receive adequate medical care, finding that there was no indication that his transport to the VA for further evaluation of his disability was medically necessary.  *Id.*  The court also rejected the plaintiff's attempt to construe his claim as a denial of his access to courts.  Acknowledging that inmates do have a constitutionally protected right of access to the courts under *Bounds v. Smith* 430 U.S. 817, 821 (1977), the court quoted a passage from the Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 355 (1996):

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

The court concluded that the plaintiff's desire to litigate his disability claim was not constitutionally protected.

Plaintiff contends that the case of *Johnson v. Avery*, 393 U.S. 483 (1968), supports his position.  In *Johnson*, a Tennessee state prisoner was placed in maximum security for violating a prison regulation barring inmates from helping other prisoners prepare petitions for post-conviction relief.  The inmate filed a motion in federal court requesting law books

and a typewriter and seeking to get out of maximum security.  His motion was treated as a petition for writ of habeas corpus.  The State argued that the regulation was justified as a part of its disciplinary administration of the prisons.  The Supreme Court held that as long as the State offered illiterate inmates no alternatives for legal assistance, the regulation was invalid. It effectively barred prisoners from access to federal habeas corpus and conflicted with 28 U.S.C. §2242.  The Court does not specifically refer to the Petition Clause of the First Amendment.

Plaintiff cites the following quote from *Johnson:*

> There can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions.  Here Tennessee has adopted a rule which, in the absence of any other source of assistance for such prisoners, effectively does just that. The District Court concluded that '(f)or all practical purposes, if such prisoners cannot have the assistance of a 'jailhouse lawyer,' their possibly valid constitutional claims will never be heard in any court.'  252 F.Supp. at 784...

*Id.* at 487.

Obviously, the Court in this case found that the regulation interfered with the prisoner's right to access to courts secured under the First Amendment, not any right to file a disability claim.  Plaintiff urges that the *Johnson* case is nevertheless applicable, and explains his position in his Response [22], p. 3:

> To place the above quote into the context of this case, Article One, Section 8, of the U.S. Constitution, gives the U.S. Congress the power to create and maintain an active military during both peacetime and during times of war, Congress has also created and maintains the Veterans Administration to aid and assist former military personnel and their families, so just as a State cannot enact, adopt or enforce a rule forbidding certain prisoners from filing habeas

corpus petitions, it therefore follows that veteran prisoners should not be likewise hindered from obtaining deserved V.A. disability benefits for both him or her self and his or her family.  And to allow MTC and Ollie Little and/or the State to change EMCF's longstanding policy of transporting inmates to the Jackson, MS., V.A. Medical Center for medical appointments and/or treatment of service related injuries would do just that to any/all veterans housed at EMCF along with their families.

Response [22, p. 3].

Interestingly, as Plaintiff points out, Justice Douglas in the *Johnson* case references veterans' benefits in his concurrence, as follows:

> ... The plight of a man in prison may in these respects be even more acute than the plight of a person on the outside.  He may need collateral proceedings to test the legality ... .   He may have grievances of a civil nature against those outside the prison.  His imprisonment may give his wife grounds for divorce and be a factor in determining the custody of his children; and he may have pressing social security, workmen's compensation, *or veterans' claims*.

*Id.,* 393 U.S. at 492-93.

Although an interesting argument, the Court finds no other authority for applying the *Johnson* holding in this case.  The right to access to courts has long been established through the Supreme Court's interpretation of the Petition Clause of the First Amendment.  The undersigned finds a major distinction in extending this holding to applications for government benefits, including VA benefits.  There is no evidence that this is an official state or prison policy (to refuse transportation of veteran prisoners) or that it was not simply a failure in Plaintiff's individual case.  Even if it were a prison policy, it was enacted for security reasons, and Plaintiff has no liberty interest created by the State in being transported

from a state facility for a medical examination. This is not a condition imposing an "atypical and significant hardship" under *Sandin.* Although the military was established by our Constitution, that fact does not create a constitutional right to be transported to the VA in connection with a disability application. As a veteran, Plaintiff is not a member of a suspect class for Equal Protection purposes, and strict scrutiny of the State of Mississippi's laws or MDOC regulations and policies is not appropriate.

This Court finds that the holding in the *Marrow-El* case should be applied herein, as the facts are similar and that court analyzed the applicable law regarding the plaintiff's Due Process and First Amendment rights. A constitutional claim has not been set forth against Defendants in the instant case.

The burden was on the VA to assist Plaintiff with his disability application. When an incarcerated veteran needs a medical examination for his disability application, the "VA is obligated to either assist the veteran in obtaining evidence or explain its exhaustive but unsuccessful attempts to obtain that evidence." *Brown v. Shinseki,* 08-3542, 2011 WL 378899 at *4 (Vet. App. Feb. 7, 2011). This holding has no application to these Defendants-- it is based upon the federal statutes applicable to the Department of Veterans Affairs. In Plaintiff's case, the VA could have contacted these Defendants directly and attempted to arrange his transportation, and they may have done so. However, the VA has no authority to require that a correctional facility release an inmate for purposes of a medical examination. *McNamee v. Shiseki,* 12-925, 2012 WL 5419980 at *2 (Vet. App. Nov. 7, 2012). Plaintiff

could have filed a lawsuit requesting to be transported by his custodians *prior to* the VA denial or at least prior to the final appeal. The VA could have also petitioned a state or federal court to allow the transportation to fulfill its obligations. It is not unreasonable for MDOC to require a court order before allowing a prisoner to be transported for a non-emergency medical appointment.

Plaintiff also contends that these Defendants violated Miss. Code Ann. § 47-3-3 (Rev. 2011) by failing to transport him to the VA for his appointment. This statute provides:

> A person committed or in custody on a criminal charge shall not be removed from the place of his confinement into the custody of any other officer, unless it be by habeas corpus or some other legal writ, except for trial, or in case of fire or infection, or other necessity, or in accordance with express provision of law. If any person, after such commitment, shall make out or issue any warrant or process for such removal except as authorized, it shall be void.

Plaintiff asserts that the wording "other necessity" includes his VA medical appointment. In the Court's opinion, a medical appointment for disability benefits would not constitute a "necessity" requiring or allowing the removal of a prisoner from his place of confinement. However, even if Plaintiff established that these Defendants' actions did violate §47-3-3, a violation of state law by MDOC, by these Defendants, does not establish a constitutional violation. The law is that "a violation of a state statute alone is not cognizable under §1983 because §1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *Giovanni v. Lynn,* 48 F.3d 908, 912-913 (5th Cir. 1995) (The law is clear: a violation of state law does

not state a constitutional claim cognizable under 42 U.S.C. § 1983). *See also Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir. 2003) ("It is well-established . . . that a state's violation of its own laws does not create a claim under § 1983).

Plaintiff asserts that these Defendants' actions also violated the MDOC policy which requires the medical departments to schedule both on-site and off-site medical examinations. Again, even if their actions did violate MDOC policy, this does not establish a constitutional violation. The failure of prison officials to follow their own polices does not, without more, establish a constitutional violation. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). It is questionable that the policy was even violated, as this was not a matter of Plaintiff being treated for an illness--it was only an evaluation for benefits. Even if a violation of MDOC policy, Plaintiff has not stated a constitutional violation.

Plaintiff's claims against some of the Defendants seems to be based only upon their role in the handling of Plaintiff's grievances about this matter and in the enforcement of the statutes and policies (Buscher, Smith and Epps). The Court finds that Plaintiff does not have a federally protected liberty interest in having a prison grievance investigated or resolved to his satisfaction. *Gieger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Mahogany v. Miller*, 252 F.App'x 593, 595 (5th Cir. 2007) (holding that inmate does not have protected liberty interest in filing grievances). Thus, his claims related to how his grievances were handled are frivolous. *See Morris v. Cross*, 476 F. App's 783, 785 (5th Cir. 2012) (finding inmate's claim that he was denied adequate investigation into his grievance was properly

dismissed as frivolous); *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (finding prisoner "does not have a constitutional right to a grievance procedure at all," therefore claims that appeals within the prison system were "arbitrarily and capriciously denied" are not cognizable).

It is unfortunate that Plaintiff was unable to be examined in connection with his application for veteran's benefits.  However, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted, and that his claims must be dismissed on this basis.  Because these Defendants did not violate Plaintiff's constitutional rights by their failure to transport him to the appointment, his Complaint must be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B).

## IV.  Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED:**

That Defendant Little's Motion to Dismiss Complaint [18] is hereby **GRANTED**; and the claims against all remaining Defendants are dismissed under 28 U.S.C. § 1915.

IT IS FURTHER ORDERED that the Complaint is dismissed with prejudice, and a separate Final Judgment in favor of all Defendants shall be entered on this date.

SO ORDERED this the 31st day of March, 2015.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

15